❏ Original          ❏

CLERK'S OFFICE
A TRUE COPY
Aug 04, 2023
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.   23   MJ   134 |
| Information about the location of the cellular telephones | ) | |
| assigned call numbers (310) 985-8805 and (310) 985-4207 | ) | |
| (the "Target Cell Phones"), whose service provider is Verizon, | ) | |
| as further described in Attachment A | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before      8/18/2023      *(not to exceed 14 days)*

❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to      Hon. William E. Duffin      .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☑ for   30   days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:      8/4/2023 at 1:02 PM                    *William E. Duffin*
                                                                      *Judge's signature*

City and state:   Milwaukee, WI                         Honorable William E. Duffin, U.S. Magistrate Judge
                                                              *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# <u>ATTACHMENT A</u>

## Property to Be Searched

1. Records and information associated with the cellular devices assigned call number (310) 985-8805 and (310) 985-4207 (referred to herein and in Attachment B as "the Target Cell Phones"), with listed subscriber(s) MICHAEL PUGLIESE**,** that is in the custody or control of Verizon (referred to herein and in Attachment B as the "Service Provider" or "Provider"), a wireless communications service provider that is headquartered at 180 Washington Valley Rd., Bedminster, NJ 07921.

2. The Target Cell Phones.

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**I.       Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.   Information associated with each communication to and from the Target Cell Phones for a period of 30 days from the date of this warrant, including:

  i.   Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

  ii.   Source and destination telephone numbers;

  iii.   Date, time, and duration of communication; and

  iv.   All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phones will connect at the beginning and end of each communication.

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phones.

b.   Information about the location of the Target Cell Phones for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

  i.   To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell

1

Phones on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of Title 21, United States Code, Sections 841 and 846, and Title 18, United States Code, Sections 1956 and 1957 involving MICHAEL PUGLIESE and others known and unknown for a period of 30 days from the date of this warrant.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

2

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Aug 04, 2023
s/ D. Olszewski

Deputy Clerk U.S. District Court
Eastern District of Wisconsin

| | | | | | |
|---|---|---|---|---|---|
| In the Matter of the Search of | ) | | | | |
| *(Briefly describe the property to be searched* | ) | | | | |
| *or identify the person by name and address)* | ) | Case No. | 23 | MJ | 134 |
| Information about the location of the cellular telephones assigned call | ) | | | | |
| numbers (310) 985-8805 and (310) 985-4207 (the "Target Cell Phones"), | ) | | | | |
| whose service provider is Verizon, as further described in Attachment A | ) | | | | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 846 | Distribution, possession with intent to distribute, and conspiracy to distribute and possess with the intent to distribute controlled substances. |
| 18 U.S.C. §§ 1956 & 1957 | Money Laundering. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Bryan Ayers, DEA SA
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means)*.

Date: ____8/4/2023____

_____
*Judge's signature*

City and state: Milwaukee, WI

Honorable William E. Duffin, U.S. Magistrate Judge
_____
*Printed name and title*

I, Bryan Ayers, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephones assigned call numbers (310) 985-8805 and (310) 985-4207 (the "Target Cell Phones"), whose service provider is Verizon ("Service Provider"), a wireless telephone service provider headquartered at 180 Washington Valley Rd., Bedminster, NJ 07921. The Target Cell Phones are described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.     Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phones.

3.    I am a Special Agent assigned to the Milwaukee District Office of the Drug Enforcement Administration (DEA).  I have worked as a Special Agent for the past 3 years. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

1

4.      During my tenure as a law enforcement officer, I have been involved in the investigation of drug traffickers in Milwaukee County, in the State of Wisconsin, across the United States, and internationally. I have received training in the investigation of drug trafficking, money laundering, and computer crimes.

5.      The facts in this affidavit come from my personal observations, my training and experience, my review of documents, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841 and 846, and Title 18, United States Code, Sections 1956 and 1957, have been committed, are being committed, and will be committed by MICHAEL PUGLIESE, who is the user of the Target Cell Phones. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of other individuals who are engaged in the commission of these offenses.

7.      The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

8.      The United States, including the Drug Enforcement Administration, is conducting a criminal investigation of a drug trafficking and money laundering organization operating throughout the United States and internationally, including MICHAEL PUGLIESE and others,

known and unknown, for possible violations of Title 21, United States Code, Sections 841 and 846, and Title 18, United States Code, Sections 1956 and 1957.

9.     The co-owners of an online pharmacy (PILL2DAYS), which is illegally selling controlled and non-controlled prescription drugs, are located in India, but distribute controlled pharmaceuticals to redistributors in the United States.  The primary drug shipper, MICHAEL PUGLIESE, is located in Corona, California.    PUGLIESE receives bulk drug parcels at his residence located at 4129 Adishian Way, Corona, California 92883 and other locations that are controlled by PUGLIESE.  PUGLIESE receives customer drug order details sent to messaging applications on his cell phone from PILL2DAYS.  PUGLIESE packages the drugs for individual orders, creates shipping labels, and drives the packaged drug parcels to various shipping stores and post offices to be shipped, via the U.S. Postal Service (USPS).  PUGLIESE also receives customer drug payments as a means to launder the funds and then transfers the drug proceeds to financial accounts maintained by PILL2DAYS.    PUGLIESE has shipped multiple drug parcels to the Milwaukee undercover agent purported to contain Adderall (a schedule II controlled substance), oxycodone (a schedule II controlled substance), and tramadol (a schedule IV controlled substance). Laboratory analysis confirmed multiple drug parcels shipped by PUGLIESE to the Milwaukee undercover agent consisted of counterfeit pills containing p-Fluorofentanyl (a schedule I controlled substance).

10.    Beginning in August 2020, case agents interviewed source of information SOI-1 (SOI-1) and source of information SOI-2 (SOI-2) multiple times regarding an illegal online pharmacy (PILL2DAYS).  SOI-1 and SOI-2 identified an online pharmacy www.pill2days.com ("PILL2DAYS"), from which SOI-1 and SOI-2 had purchased Xanax (a Schedule IV controlled substance) and suspected Adderall (a Schedule II controlled substance) in the summer of 2020. SOI-1 communicated with the website representative via email. Case agents later reviewed these

3

emails and observed the discussions about controlled substances being shipped from overseas to the United States, controlled substances being shipped domestically from re-shippers located in the United States, prices, a drug photograph, and drug quantities. SOI-2 was responsible for sending the drug payments, so SOI-2 communicated with a website representative via text messages at a phone number known to be used by the illegal online pharmacy PILL2DAYS.

11.     In December 2020, a Milwaukee undercover agent began conducting controlled online buys from PILL2DAYS.  Multiple domestic drug shippers and payment processors were identified.  Case agents executed multiple search warrants and interviewed co-conspirators, which further confirmed drug trafficking by PILL2DAYS.  Various types of controlled substances, drug proceeds, and other evidence were recovered during the execution of search warrants.

12.     On June 2, 2022, case agents conducted a controlled online buy from PILL2DAYS of Adderall (a schedule II controlled substance) and oxycodone (a schedule II controlled substance).  The drug parcel was shipped by MICHAEL PUGLIESE from or near Corona, California to a Milwaukee undercover agent.  Both drugs were found to contain p-Fluorofentanyl (a schedule I controlled substance).

13.     On July 12, 2022, case agents conducted a controlled online buy from PILL2DAYS of Adderall (a schedule II controlled substance) and tapentadol (a schedule II controlled substance).  The Adderall drug parcel only was shipped by MICHAEL PUGLIESE from or near Corona, California to a Milwaukee undercover agent.  The Adderall was found to contain p-Fluorofentanyl (a schedule I controlled substance).

14.     On August 25, 2022, case agents conducted a controlled online buy from PILL2DAYS of Adderall (a schedule II controlled substance) and tapentadol (a schedule II controlled substance).  A drug parcel containing half of the Adderall and one tramadol tablet was shipped by MICHAEL PUGLIESE from or near Corona, California to a Milwaukee undercover

4

agent. The Adderall was found to contain only acetaminophen and the tramadol was confirmed to be tramadol (a schedule IV controlled substance).

15.     On November 1, 2022, case agents conducted a controlled online buy from PILL2DAYS of Adderall (a schedule II controlled substance), oxycodone (a schedule II controlled substance), and tapentadol (a schedule II controlled substance). The Adderall and oxycodone drug parcels were shipped by MICHAEL PUGLIESE from or near Corona, California to a Milwaukee undercover agent. The Adderall was found to contain p-Fluorofentanyl (a schedule I controlled substance), and the oxycodone was found to contain only acetaminophen (a non-controlled substance).

16.     On February 17, 2023, case agents conducted a controlled online buy from PILL2DAYS of Adderall (a schedule II controlled substance) and tapentadol (a schedule II controlled substance). The Adderall drug parcel only was shipped by MICHAEL PUGLIESE from or near Corona, California to a Milwaukee undercover agent. The Adderall was found to contain only acetaminophen (a non-controlled substance).

17.     On April 17, 2023, case agents conducted a controlled online buy from PILL2DAYS of Adderall (a schedule II controlled substance) and oxycodone (a schedule II controlled substance). The Adderall drug parcel only was shipped by MICHAEL PUGLIESE from or near Corona, California to a Milwaukee undercover agent. The analysis of the Adderall is pending.

18.     Case agents have reviewed U.S. Customs and Border Protection records and found that between October 12, 2020 and November 9, 2022, a total of six bulk drug parcels were seized in transit to PUGLIESE's residence at 4129 Adishian Way, Corona, California 92883.

19.     On September 23, 2022, the Honorable William E. Duffin, United States Magistrate Judge, issued a warrant for records, to include text message content, messaged photographs, and

5

voicemails from J2 Web Services, Inc. for the phone number used by the online pharmacy PILL2DAYS to take drug orders and coordinate drug payments.

20.	These J2 Web Services, Inc. records showed the person who paid for the telephone account was MICHAEL PUGLIESE at 4129 Adishian Way, Corona, CA 92883. Case agents reviewed text message content and found the primary PILL2DAYS domestic drug shipper and payment processor is MICHAEL PUGLIESE using cell phone number **(310) 985-8805**. These text messages included the details about the drug parcels that PUGLIESE shipped to the Milwaukee undercover agent, and the fact that PUGLIESE created a fictitious business, Calisun Designs, for the purpose of shipping drug parcels and laundering drug money.

21.	On October 18, 2022, case agents received records from Newfold Digital, Inc. pursuant to a DEA Administrative subpoena. Newfold Digital, Inc. is a domain hosting company that was receiving monthly payments from PUGLIESE's PayPal account. Case agents know many of the drug parcels use the return address "Sun Desyn" or a slight variation. The Newfold Digital, Inc. records identify the account holder details as follows:

a.	Name/Organization: Calisun Designs

b.	Name: MICHAEL PUGLIESE

c.	User ID: MED195346

d.	Address: 39671 Corte Santa Barbara, Murrieta, CA 92563-5235

e.	Email: med5346@live.com

f.	Phone: (310) 985-4207

g.	Domain: calisundesigns.com

22.	On January 24, 2023, case agents received records from T-Mobile pursuant to a DEA Administrative subpoena. These records are pertaining to PUGLIESE's phone number (310) 985-8805. These records reveal that PUGLIESE has been in communication with PILL2DAYS

6

4,336 times between June 7, 2022 and January 18, 2023. T-Mobile records identify the subscriber as the following:

    a. Customer name: Michael Mike

    b. Subscriber name: MICHAEL PUGLIESE

    c. Service address: 39671 Corte Santa Barbara, Murrieta, CA 92563 USA

    d. Billing address: 39671 Corte Santa Barbara, Murrieta, CA 92563 USA

23.    On February 1, 2023, case agents received records from T-Mobile pursuant to a DEA Administrative subpoena. These records are pertaining to PUGLIESE's phone number (310) 985-4207, which he used to register the fictitious company, Calisun Designs. These records identify the following subscriber:

    a. Customer name: Michael Joo

    b. Subscriber name: MICHAEL PUGLIESE

    c. Service address: 39671 Corte Santa Barbara, Murrieta, CA 92563 USA

    d. Billing address: 39671 Corte Santa Barbara, Murrieta, CA 92563 USA

24.    In June 2023, case agents learned that PUGLIESE transferred the two Target Cell Phone Numbers (310)985-8805 and (310)985-4207 to Verizon Wireless. On June 20, 2023, case agents received records from Verizon, pursuant to a DEA Administrative subpoena. These records show both of these cell phone numbers are registered to the following subscriber:

    a. Name: MICHAEL PUGLIESE

    b. Address: 4129 Adishian Way, Corona, California 92883

    c. Email: med5346@live.com

25.    On June 22, 2023, case agents conducted a controlled online buy from PILL2DAYS of Adderall (a schedule II controlled substance), oxycodone (a schedule II controlled substance),

7

and zolpidem (a schedule IV controlled substance). The zolpidem drug parcel only was shipped by MICHAEL PUGLIESE from or near Corona, California to a Milwaukee undercover agent. The analysis of the zolpidem revealed it contains alprazolam (a Schedule IV controlled substance).

26.    On June 26, 2023, the Honorable Stephen C. Dries, United States Magistrate Judge, issued a warrant authorizing records for the same target phone numbers (310) 985-4207 and (310) 985-8805, to include but not limited to, Pen Register, Trap and Trace, and Ping (cell site and GPS coordinate data). The produced records confirmed PUGLIESE's location at his residence and place of employment, which helped case agents in conducting physical surveillance of PUGLIESE through July 26, 2023. The prior warrant expired on July 26, 2023, and case agents are now requesting a new warrant for prospective location information for PUGLIESE's telephones (the "Target Cell Phones") for a period of 30 days.

27.    Case agents believe that SOI-1 is a reliable witness as SOI-1 has provided a statement against SOI-1's own penal interest, and information provided by SOI-1 has been independently corroborated by case agents. SOI-1's criminal history consists of misdemeanor assault and misdemeanor menacing. SOI-1 has no prior felony convictions. SOI-1 has provided information in other investigations, and that information was found to be accurate and reliable. SOI-1 is cooperating with law enforcement for potential prosecutorial and judicial consideration for his federal felony drug trafficking arrest, which remains pending.

28.    Case agents believe that SOI-2 is a reliable witness as SOI-2 has provided a statement against SOI-2's own penal interest, and information provided by SOI-2 has been independently corroborated by case agents. SOI-2's criminal history consists of one prior federal felony conviction for conspiracy to commit health care fraud, mail and wire fraud, money laundering, and illegal monetary transaction, conspiracy to distribute controlled substances, and mail fraud. SOI-2 may have been arrested for forgery in the 1980s. SOI-2 has provided information

8

in other investigations, and that information was found to be accurate and reliable. SOI-2 cooperated with law enforcement for consideration in his most recent federal felony drug trafficking case and revocation sentence for his supervised release in the prior case.

29. Based upon my training, experience, and familiarity with the investigation, I believe that the user of both Target Cell Phones is using the Target Cell Phones to communicate with others to further his drug trafficking and money laundering activities. Case agents believe the location information requested will assist in identifying the user of the Target Cell Phones and assist in identifying his residence or other locations used to conduct his role in the drug trafficking or money laundering organization where additional evidence is likely located.

## TECHNICAL BACKGROUND

28. In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

## Cell-Site Data

29. Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the Target Cell Phones. Based on my training and

9

experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

### E-911 Phase II / GPS Location Data

30.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

10

## Pen-Trap Data

31.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

## Subscriber Information

32.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phone's user or users and may assist in the identification of co-conspirators.

## AUTHORIZATION REQUEST

33.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

34.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

35.     I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phones on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

36.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. The investigation is focused on a sophisticated international drug trafficking and money laundering organization, with targets located throughout the world. This investigation is expected to remain covert for at least 30 days. Providing immediate notice to the subscriber or user of the Target Cell Phones would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further

specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

37.     Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phones outside of daytime hours.

13

## ATTACHMENT A

### Property to Be Searched

1. Records and information associated with the cellular devices assigned call number (310) 985-8805 and (310) 985-4207 (referred to herein and in Attachment B as "the Target Cell Phones"), with listed subscriber(s) MICHAEL PUGLIESE**,** that is in the custody or control of Verizon (referred to herein and in Attachment B as the "Service Provider" or "Provider"), a wireless communications service provider that is headquartered at 180 Washington Valley Rd., Bedminster, NJ 07921.

2. The Target Cell Phones.

1

# ATTACHMENT B

## Particular Things to be Seized

## I.  Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.  Information associated with each communication to and from the Target Cell Phones for a period of 30 days from the date of this warrant, including:

   i.   Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

   ii.  Source and destination telephone numbers;

   iii. Date, time, and duration of communication; and

   iv.  All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phones will connect at the beginning and end of each communication.

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phones.

b.  Information about the location of the Target Cell Phones for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

   i.   To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phones on the

1

Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of Title 21, United States Code, Sections 841 and 846, and Title 18, United States Code, Sections 1956 and 1957 involving MICHAEL PUGLIESE and others known and unknown for a period of 30 days from the date of this warrant.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

2